TERRELL, Justice
(dissenting).
I agree in the main with the statement of the case, including the deductions from it of Mr. Justice SEBRING, but I disagree with his conclusion that the cause should be remanded to the rules for taking testimony. It seems to me that the material facts essential to dispose of-the case are present and are not disputed.
We are confronted with a class suit brought by appellants as complainants representing the classroom teachers of Duval County. They are in quest of a declaratory decree announcing their status under Item 16, Subsection g, of Chapter 28115 and Chapter 28139, Acts of 1953. Defendants proffered an answer to the complaint and motion for final decree on bill and answer was granted, the pertinent part of which is as follows:
“1. That the provision contained in Chapter 28115, Laws of Florida, Acts of 1953, for teacher pay raise of $350.-00 per annum per instructional unit to be paid from State funds require that the money appropriated thereunder shall be apportioned and distributed as provided by Chapter 236 Florida Statutes. *
“2. That as applied to Duval County neither Chapter 28115 or Chapter 28139 make it mandatory that each teacher be paid from the combined State and County Funds the sum of $350.00 per annum in excess of the salary paid in the school year 1952-53.
“3. That the budget of the Duval County Board of Public Instruction as revised by transfers made on September 2, 1953, adopted by said County Board, and approved by both the Duval County Board of Public Instruction and by the State Superintendent of *444 Public Instruction, is valid and effective.
“4. That the several matters and things specifically complained of by the respective individual teachers in their special individual rights are controlled by the Teacher Tenure Act, same being Chapter 21197, Laws of Florida, Acts of 1941, and the allegations of defendants’ answer, which are deemed admitted by the several plaintiffs, show that such acts of the defendants were authorized by the provisions of said tenure act.”
This appeal is from the decree so entered.
The crucial point for determination is whether or not the chancellor correctly interpreted the rights of complainants under the cited statutes.
The pertinent part of Item 16, Subsection g, Chapter 28115, is as follows:
First Year Biennum
“g. Minimum Foundation Program—
Public Schools:
1. Participation'Under Current Law $55,600,000.00 $113,523,345.00
2. Provision for $350 Teacher pay raise (Payable at the rate of $350 per annum per instructional unit; Provided, however, that county teacher salary schedules shall provide at least a $350 annual increase from State funds over salary schedules for the previous year) . 8,300,000.00 16,957,150.00

The funds appropriated herein shall be expended in accordance with Chapter 236, Florida Statutes, as amended; * *
The pertinent part of Chapter 28139 amends Section 236.07, Florida Statutes, F.S.A., relating to determination of instructional salaries for teachers, supervisors, administrative and other services and concludes with the proviso “that nothing contained herein shall prevent each teacher employed in the public school system of the State of Florida from receiving the full amount of Three Hundred and Fifty ($350.00) Dollars yearly raise granted to said teachers in the 1953 State Appropriations Bill.”
It is admitted that the Board of Public Instruction of Duval County received the funds allocated to it under Paragraph G of Item 16, Chapter 28115, Acts of 1953, as quoted. Appellants contend that for the school year 1953-1954 they áre entitled to receive the same salary from State and County funds as they received under salary schedule1 adopted by the Board of Public Instruction of Duval County for the 1952-1953 term, plus the $350 made available to them by the quoted part of Chapter 28115, Acts of 1953, which the Board of Public Instruction has refused to grant them but has appropriated county school funds that could have been so used, to other school purposes.
The Board of Public Instruction admits that it has not increased the salaries of appellants as per salary schedule for the 1952-1953 term, but says that even though the increases claimed have not been provided it has expended all funds allocated to it under Chapter 28115 for teachers’ salaries in compliance with said act. As part of its answer to the complaint it details the manner in which said funds have been used and *445 points out that said budget of expenditures was approved by the Duval County Budget Commission and the State Superintendent of Public Instruction. Having followed what it conceived to be the law in doing this, appellees contend that their action is binding on the Board as well as appellants.
Such were the issues on which the chancellor based the decree appealed from. The Board of Public Instruction contends that the decree should be affirmed because all such appropriations must be expended in accordance with Chapter 236, Florida Statutes, F.S.A., that the Budget relied on was not in the form required by Section 237.06, Florida Statutes, F.S.A., in that it did not show accurate receipts from state sources, as required by law, that it did not show correct balances as of June 30, 1953, that it had not been approved by the Board of Public Instruction as required by Section 237.-11, Florida Statutes, F.S.A., and that the amount it showed for expenditures for fuel and other utilities was inaccurate. Said the Board, to hold that such inaccuracies could not be corrected, to speak the truth, would defeat the purpose of the Budget Law and would have a reverse effect on the economy and efficiency of a properly planned school program.
There may be substance to this contention but the teachers were not responsible for it and it is not the answer to the question raised. Every defense so pointed out had to do with conditions governed by statute. The statute involved here, Chapter 28115, was the last expression of the legislature on the question, and we cannot escape the conclusion that the legislature intended that the appropriation of $350 per annum was tied to the schedule of teachers’ salaries for Duval County for the previous year and required that each instructional unit be paid $350 in addition to that provided in the 1952-1953 salary schedule. Refer to Exhibit 4, page 22 of Transcript which shows such schedule. Read in their entirety, we do not see that any other interpretation could reasonably be imposed on the two statutes brought in question.
Much is said in the briefs about the influence of Section 9, Article 12, of the State Constitution, F.S.A., on appropriations by the legislature of the character of that involved here. Historically it is not amiss to point out that Section 9, Article 12, of the State Constitution, F.S.A., was submitted and adopted by the electorate in response to the doctrine announced by this Court in Board of Public Instruction for Santa Rosa County v. Croom, 57 Fla. 347, 48 So. 641, and similar cases holding that the legislature was without authority to appropriate from the General Revenue Fund to support public free schools. The reason for the holding was that other means had been provided in the Constitution for this purpose. Since Section 9, Article 12, authorized the legislature to make appropriations from the General Revenue Fund for public school purposes, it certainly can impose any reasonable limitation on its distribution. The County Boards of Public Instruction are nothing more than trustees for distribution of such funds as directed by the legislature, Savage v. Board of Public Instruction, 101 Fla. 1362, 133 So. 341; State v. Board of Public Instruction for Dade County, 126 Fla. 142, 170 So. 602.
Since the adoption of the minimum foundation school program in 1941, the legislature has at each biennial session made substantial appropriations from the public treasury to aid the counties in support of the miminum foundation program. In the case at bar, notwithstanding Chapter 236 requiring that such appropriations be distributed as provided by law, Chapter 28139 concludes with the proviso which in effect requires that each teacher be given a salary raise of $350 yearly from the appropriation. The text of the act is equally mandatory. The history of this appropriation, the circumstances leading to it, and the controversy incident to its passage through the legislature, are still fresh in the minds of everyone and refute any other interpretation than the one imposed in this opinion. What everyone knows the Court is presumed to know. From the Journal and the controversy that took place in con *446 nection with the enactment of this appropriation, there can be no doubt that it was intended to give the teachers a raise in compensation.
I would reverse the judgment with directions to proceed as directed in this opinion.