THORNAL, Justice.
Appellant seeks reversal of a decree validating a proposed issue of bonds.
We must determine whether the respondent municipality has the power to issue bonds to finance recreational facilities, including a municipal golf course.
North Palm Beach Village was created by Chapter 31481, Sp.Laws of Florida, 1956 Extraordinary Session. By ordinance the municipality proposes to issue bonds in the amount of $1,430,000 to acquire funds to construct certain recreational facilities. It is conceded that one of the principal objectives is the establishment of a municipal golf course. The question of issuing the bonds was submitted to a freeholders election. A majority of the qualified electors participated in the election. The issuance of the bonds was approved overwhelmingly by those who voted. Section 6, Article IX, Florida Constitution, F.S.A. The chancellor entered a decree validating the issue. The State seeks review of this decree.
The sole contention is that the appellee Village has no charter power to acquire and operate a municipal golf course. The appellant State of Florida relies upon the decision of this Court in City of Bradenton v. State et al., 88 Fla. 381, 102 So. 556, 557, 36 A.L.R. 1297.
The Bradenton decision did involve the question of the validity of an issue of bonds for the purpose of acquiring a municipal golf course. The trial judge declined to validate the issue on the ground that it was contemplated that the funds would be used for the benefit of a private corporation. On appeal this Court held that in so ruling the chancellor had not abused his discretion. However, preliminary to its ultimate judgment, this Court did discuss in *642 some measure the question of the power of the City of Bradenton to operate a golf course under charter powers which authorized the acquisition of property “for the establishment of public parks and playgrounds.” In the cited decision by way of dictum the Court held that a “golf course” did not fall within the authorized category. There was no charter power to operate “recreational” programs.
Without undertaking to detract from the ultimate judgment of the Court in the Bradenton case, we find that decision not controlling here. The charters of the two municipalities are not the same.
Admittedly, we must look to the charter of the appellee Village in order to ascertain whether it has the power to acquire property for the operation of a municipal golf course. Article V, Section 1, of Chapter 31481, supra, reads as follows:
“The said Village of North Palm Beach * * * shall exercise all the powers, privileges, and functions of municipalities prescribed, authorized and provided in the general laws of the State of Florida fully and completely unless prohibited by or contrary to the provisions of this Act.”
Article V, Section 3(35), Chapter 31481, supra, permits the appellee Village:
“Except as otherwise provided herein, to have all the powers and privileges granted to municipalities under the general laws of the State of Florida.”
Article V, Section 3(36), Chapter 31481, supra, empowers the Village:
“To regulate the use of recreational facilities owned by the Village, to charge a reasonable fee for the use .thereof, or to restrict the use thereof to property owners in or residents of said Village.”
From the quoted provisions of the municipal charter it is apparent that the ap-pellee Village is authorized to exercise all powers and functions of a municipality provided by the general laws of the State unless prohibited by the charter. Although golf courses are not specifically itemized by name as a municipal activity, it is clear from the charter provisions that the Legislature contemplated that the Village would own recreational facilities for the reason that it was authorized to regulate and charge a reasonable fee for the use of such recreational facilities.
The charter also specifically conveyed to the Village of North Palm Beach all powers granted to municipalities by general laws unless prohibited by the charter. Chapter 418, Florida Statutes, F.S.A., is a general law which authorizes municipalities to acquire land for use “as playgrounds and recreational centers and other recreational purposes.” By virtue of the charter provisions of the appellee Village, the authorizing provisions of Chapter 418, supra, are by reference incorporated in the Village charter as definitely as if they were expressly stated therein. In other words, the general law having been incorporated into the Village charter by its own provisions, we find that the Village of North Palm Beach is authorized to acquire land or buildings, or both, for use “as playgrounds and recreational centers and other recreational purposes.” It remains merely to determine whether the operation of a golf course is a “recreational purpose.” We think it perfectly obvious that, to those who enjoy the game, golf offers a very satisfying and satisfactory means of recreation. We know that throughout Florida golf is a popular pastime offered to attract visitors and provide for residents opportunities for recreation, relaxation and diversion. When so considered, the operation of golfing facilities is certainly a recreational purpose authorized by Chapter 418, supra. It is therefore, a municipal power enjoyed by the appellee Village by virtue of its own charter provisions which, by reference, incorporate the provisions of the general authorizing statute.
*643 Finding as we do that the purpose to be served by the issuance of the proposed bonds is well within the powers of the municipality, we are led to the conclusion that the chancellor ruled correctly in approving the issuance of the bonds. This being so, the decree under assault is affirmed.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and DREW, JJ., concur.